Cabuthees, J.,
delivered the opinion of the court.
This case presents the question of the invalidity of a condition in restraint of marriage in the will of Richard 'C. Boyd, dec’d. The clauses which raise the question, are:
“Item 2. All my negroes 'and worldly goods of whatsoever kind, shall remain in possession of my wife,' Mary E. Boyd, for the benefit of herself and my children, John C., Richard S., and Robert A. Boyd, as long as she remains my widow, "or until my children become of age, or marry.”
In “Item 3,” he provides that any surplus that may arise out' of the property after supporting the family, as well as the proceeds of a tract of land he owned in *514 Stewart county, “be laid out in young negroes for the benefit of my wife and children.” And he further provides in the same clause, “if my wife should marry before my children become of age, that my land be equally divided between my children; and my personal property be equally divided between my wife and my children: and it is my will, and I direct that my wife hold and enjoy her portion of my estate during her lifetime, and at her death to be equally divided between her children: and it is my will, and I direct that if my wife .should not marry before my children become of age or marry, that as they become of age or marry, they shall have allotted and given to them an equal portion of my personal perishable property, with my wife and other children, and an equal portion of two thirds of my land, with my other children; and it is my will, that should my children all become of age, and my wife not marry, that she retain in her possession, one third of my land, to be laid off round and about my dwelling-house, until death, or she shall marry: And I then will, and direct, that the land shall be equally divided between my children. It is my will, and I direct, if my wife should live until all my children become of age or marry, and receive their respective portions of my estate, and my wife shall not marry, she shall have full power to dispose of her portion of my personal estate in any manner she may think proper.”
He appointed his wife, who qualified, and B. W. "Williams, who renounced, to execute the will. It was admitted to probate, in April, 1841. The widow married complainant, Hughes, August, 1844, who whs appointed guardian of the three minor children in 1845.
*515 In April, 1849, this bill was filed by Hughes and wife, against the three minor children, for a construction of the will, and to have the restrictions and limitations upon her rights declared void, as being in restraint of marriage. Austin Miller was appointed guardian ad litem for the defendants, and in a brief answer committed their rights to the court without further defence. On the 5th November, 1852, a cross bill was filed by the defendants, in the name of J. B. Franklin, as their guardian, or next friend, to attach and secure the property until the end of the litigation, with the proper charges. A receiver was appointed, &c. There-are about forty slaves, and other property to a considerable amount. A further statement of the facts and subsequent proceedings is not necessary for the decision of the question presented. The chancellor decreed for-complainants in the original bill, and held that the conditions and limitations in the will, upon the event of a second marriage of the widow, were against public policy, and void. Appeal was taken to this court, since which Mrs. Hughes has died, and her adm’r, and an adm’r de bonis non, with the will annexed of her testator, are made parties. ¥e cannot concur with his Honor in his conclusion on the construction of the will, but think he erred, and his decree must be reversed.
There is, perhaps, no subject upon which a greater conflict of the authorities is to be found, on both sides of the Atlantic, and in the different States. It is, however, every where agreed, that conditions in restraint of marriage are void, and others apparently so, which are not; but the difficulty is in settling any definite-principle of easy application, calculated to produce uni *516 formity on the subject. It is for this reason that tbe confusion and conflict apparent, if not real, is found to exist in the cases. A great diversity of opinion appears in the writers and decided cases, as to the extent to which the doctrine should be carried, and where the policy on which it is founded, requires it to be arrested. The law and true policy of every Christian j country favors and encourages marriage, and frowns up-ion any improper or unreasonable restriction upon it. ■It is the dictate of nature, is enjoined by revelation, ,aud promotive of the best interests and happiness of ¡society. Therefore, the law will not permit it to be ■unduly clogged or embarrassed. But on the other hand, a man’s free control and untrammeled dominion over his own property, is equally favored. He should be allowed to prescribe such reasonable conditions to his bounty, as his own sense of propriety may dictate. His property is his own, and the bounds of his discretion and power in the disposition of it, should not be unnecessarily circumscribed. In relation to the question under consideration, it is believed that our own decisions have struck the proper medium, when correctly understood and guarded against extremes in its application to particular cases.
As to widows, however, as was suggested in argument, the privilege of dissenting from the wills of their husbands at discretion, in this State, very much weakens the necessity of this rule for their protection, against the ■ injustice of their husbands. They have no difficulty in freeing themselves from any hard conditions or unacceptable provisions that may be affixed to the property given to them; and obtaining as a matter of right, *517 the just and liberal provisions of the law as in cases of intestacy. They are free to choose between the will and the law, and therefore have no ground to complain that hard conditions are imposed upon them.
We do not consider it necessary in this case, to go at large into the examination of the cases on this subject, or attempt to reconcile them with each other, which would be impossible.
If we had no decided cases of our own on the subject, it might be proper to go back into the mazes of conflicting learning of the civil, canon and common law in this opinion, which has been done to some extent in the argument, but if this course is adopted in cases, no advantage is derived from the labor of onr predecessors, or progress made in the settlement of our system of jurisprudence. No acknowledged general principle can be deduced from the cases.
The case of Hawkins and wife vs. Skeggs, adm’r, 10 Humph., 31, is remarkably similar to this in its facts, and it is believed no difference in principle can exist. There, the property was given to the widow for life, for the benefit of herself and children, and “at the end of her widowhood, or life,” the land to be divided between her children by name: That is the provision in this will. The slaves in that case are given to her during her widowhood, or her life, except she marries. “If she marries, I give and bequeath the negro man Ned to her, and the other negroes to my children.” Such is in substance the provision in this case. If the conditions in that case were good, surely these cannot be bad. If the conditions there were not in restraint of marriage, these cannot be so. Here the *518 property is charged with the support of the children as it was there. In that case the court say, “ we are clear that there is no condition in this devise in restraint of marriage.” So we must hold in this case, or overrule that. But we approve of that decision, although it may be in conflict with some cases in the works and passages in text writers. We by no means admit, however, that that case stands in antagonism to the general current of the authorities, but in accordance with it, as we think, so far as any such current exists.
This cannot be regarded as a condition in terrorem, in the legal sense, the sole purpose of which is to deter the lady from the free exercise of her natural right, to regain her lost happiness by another matrimonial alliance. This is an event which he evidently contemplates, and makes provision for it. He places all his property in her possession and use; but it is not for her alone, but his children are equal objects of his bounty, and they are to be advanced with their equal shares of the property, as they arrive at age or marry. 'He is willing to trust her with all his properly and his children, until she • might choose to place herself j under the dominion of a stranger to them, and in that event he saw proper to terminate her estate in the whole, and make a just and equitable division between her and his offspring. He had a right to guard against this contingency, and save his children from its possible consequences. She could freely elect to marry and take the part assigned to her in that event, or • continue to enjoy the whole estate, with the trust an.nexed, for the benefit of their children. She made her *519 choice, and the consequences must follow. There is no law or rule of policy to interfere with the plain intention of the testator, and it must prevail. Can it be said that his object was to restrain her from marrying, when a different and reasonable object is clearly indicated?
The cases most relied upon in argument to sustain the decree below, are those of Middleton vs. Rice, in Penn. Law Journal, 229; and Parsons and wife vs. Winslow, 6 Mass., 117, The former is by a single judge, and is more an essay than a judicial opinion; and in much of its reasoning, if not in its conclusion, sustains the views we have taken. In the Massachusetts case, the court was divided. Both cases presented a state of facts entirely dissimilar from the one before us, and we cannot yield to them as authority, so far as they conflict with our own cases.
Many cases make a distinction between devises and bequests, where the property is given over to others upon nonconformity to annexed conditions, or the happening of the designated event, and those where it is not; holding that in the latter case it is, and in the former not in unlawful restraint of marriage.
This position is taken, and the authorities cited in 1 Sto. Eq., § 287. That is- an authority in support of our conclusion in the present case. Without saying that this would be decisive in any case to solve the difficulty, it must be regarded in all cases as a very strong circumstance to determine the question of the validity or nullity of these conditions. Many of the books regard it as conclusive.
The distinction taken in some of the cases betweenj conditions subsequent and precedent, does not seem to. *520 bo very intelligible or satisfactory in its application, and' bas as often been disregarded as observed in tbe cases.
We will not undertake to lay down any general rule oa the subject, but content ourselves with deciding that the conditions upon which the estate given to the widow in the case before us, was to determine, are reasonable and lawful, and must fix and control the rights of the parties. We leave other cases to be decided upon their own facts as they may come up.
A decree will be made here settling the rights of the parties accordingly, and.the cause remanded for the necessary accounts and orders.